UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Larry L. L., <br><br> Petitioner, <br><br> v. <br><br> ANDREW SAUL, <br> Commissioner of Social Security Administration, <br><br> Respondent. | Case No. 3:19-CV-00438-CWD <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Larry L's Petition for Review of the Respondent's denial of social security benefits, filed on November 14, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits on November 17, 2015, claiming disability beginning March 28, 2015. The application was denied initially and on reconsideration, and a hearing was conducted on August 13, 2018, before Administrative Law Judge (ALJ) Elizabeth Bentley. After considering testimony from Petitioner and a vocational expert, ALJ Bentley issued a decision on November 6, 2018, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on September 13, 2019.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty-three years of age. He obtained a bachelor's degree in construction management. (AR 38.) Petitioner's prior work experience includes work as a design drafter.

## STANDARD OF REVIEW

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

**MEMORANDUM DECISION AND ORDER - 2**

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 3**

## DISCUSSION

The ALJ found Petitioner has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, right shoulder degenerative disc disease, and status-post right shoulder arthroscopic surgery. (AR 18.) Despite his impairments, the ALJ determined that Petitioner retained the capacity to perform light work with some postural limitations. (AR 20.) The ALJ evaluated the evidence at Steps 4 and 5, finding Petitioner could perform his past relevant work as a design drafter, and also the requirements of representative occupations such as cashier, marker, and routing clerk. (AR 23 – 24.)

Petitioner contends that the ALJ's failure to make findings at Step 2 regarding Petitioner's vision impairments resulted in an erroneous RFC determination, which in turn resulted in harmful error requiring remand. Respondent argues Petitioner failed to carry his burden of proof regarding Steps 2 through 4, and that any error was harmless.

1.  **Step 2 Requirements**

At Step 2 of the sequential analysis, the ALJ must assess whether Petitioner has medically determinable impairments that are "severe" enough to significantly limit Petitioner's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" include "seeing." 20 C.F.R. §§ 404.1521(b)(2), 416.921(b)(2) ("basic work activities" includes "[c]apacities for seeing").

For an impairment to be considered severe at Step 2, the physical or mental impairment "must result from anatomical, physiological, or psychological abnormalities

**MEMORANDUM DECISION AND ORDER - 4**

which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. It must be established "by medical evidence consisting of signs, symptoms, and laboratory findings," and not by a claimant's "statement of symptoms." *Id.*; *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005); SSR 96–4p, 1996 WL 374187, at *1 (July 2, 1996); *see also* 42 U.S.C. §§ 423(d)(3) ("physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques"). The ALJ also considers "statements from ... acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, [and] what you can still do despite [your] impairment(s)...." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

Petitioner argues the ALJ erred by failing to make findings, or consider at all, whether his vision disorders constituted a medically determinable severe impairment at Step 2, which in turn affected the ALJ's RFC determination. Pet. Brief at 7. (Dkt. 16.) Petitioner is correct that the ALJ did not make any express findings regarding Petitioner's vision disorders at Step 2. Rather, ALJ found that Petitioner's lumbar and cervical spine impairments, as well has his right shoulder impairments, were medically determinable severe impairments. (AR 18.) There is no mention of Petitioner's vision disorders[1]

---

[1] Listing 2.00, which encompasses Special Senses and Speech, defines visual disorders as "abnormalities of the eye, the optic nerve, the optic tracts, or the brain that may cause a loss of visual acuity or visual fields."

**MEMORANDUM DECISION AND ORDER - 5**

anywhere in the written determination.

The Court finds the ALJ's failure to make any findings at Step 2 regarding whether Petitioner's vision disorders constituted a medically determinable severe impairment is not error. As discussed further below, Petitioner failed to carry his burden at Steps 2 and 4 of the sequential process. Petitioner presented no acceptable medical evidence that he had a medically determinable vision impairment that could be considered severe at Step 2. Further, even if the ALJ committed error at Step 2, it was harmless in this case. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded by regulation on other grounds* ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (quoting *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008)).

**2.    Analysis**

The record contains medical evidence from Beaver Medical Group of Petitioner's vision disorder reflecting treatment between February 29, 2016, and May 17, 2018. (AR 431 – 43, 675 – 729.)[2] In particular, Petitioner's medical history includes a diagnosis of diplopia and retinal edema. (AR 414, 442, 443.) On March 3, 2016, Petitioner reported "distortion," and his visual acuity was recorded as "20/25 v 20/20." (AR 437.) On March 31, 2016, Petitioner stated his vision had not changed since the last appointment, and his visual acuity was recorded as "20/30 v 20/25". (AR 435.) On May 19, 2016, Petitioner

---

[2] Some of the records are duplicates. *Compare, e.g.*, AR 431 – 32 *with* AR 770 – 71.

reported no change in his vision since his last appointment, and his visual acuity was recorded as "20/40 v 20/25". (AR 433.) On July 21, 2016, Petitioner's ophthalmologist noted Petitioner complained of poor visual acuity. (AR 431.) Notes indicate Petitioner's vision was "20/50+2 v 20/20". (AR 431.)

Petitioner continued to have re-checks of his vision approximately every one to two months throughout the remainder of 2016 to follow the diagnosis of retinal edema. (AR 767 - 749.) Treatment notes during 2016 consistently charted Petitioner's visual acuity, with notes ranging from "20/50 -1 v 20/20", to "20/80-1 v 20/25." (AR 767 - 749.)

Petitioner's right eye was tested with a focal laser on February 17, 2017, with test results confirming a diagnosis of macular edema. (AR 746 - 47.) Notes from February 26, 2018, indicate Petitioner reported his "depth perception" was worse. (AR 720.) Visual acuity was charted as "20/40 +2 v 20/20 -2". (AR 720.) Treatment notes from April 23, 2018, indicate only that Petitioner reported it was "harder to see while driving [and] harder to see reading up close." (AR 715.) Visual acuity was recorded as "20/40 v 20/20." No report or other narrative accompanied these notations indicating any specific limitations as a result of Petitioner's vision disorders, specifically the diagnosis of macular edema,[3] or what the visual acuity measurements meant. It also is unclear from the chart notes whether the visual acuity notations refer to corrected or unaided vision.

---

[3] It appears that the references to macular edema versus retinal edema are interchangeable. According to the record, "macular edema" refers to "swelling of the center part of the retina." (AR 767.)

**MEMORANDUM DECISION AND ORDER - 7**

Vicente R. Bernabe, D.O., performed a consultative physical examination of Petitioner on or about April 25, 2016, which included a visual acuity test. (AR 379 – 385.) Dr. Barnabe recorded the results of the test as follows:

| VISUAL ACUITY TEST: | Both | Right | Left |
|---|---|---|---|
| Without Glasses | 20/70 | 20/100 | 20/50 |
| With Glasses | 20/20 | 20/40 | 20/20 |

Petitioner reportedly drove himself to the appointment. Dr. Bernabe reached the opinion Petitioner could perform the demands of more than light work. (AR 383.)

State agency medical consultant Dr. Kunthearith Sin reviewed the records and prepared written findings on August 25, 2016. (AR 93 – 94.) He noted that the recent medical evidence he reviewed "does not address the macular telangiectasia. However, visual acuity was not at listing level" at the time of the examination performed by Dr. Bernabe on April 25, 2016. (AR 93.) Dr. Sin affirmed a light RFC was appropriate for Petitioner, and did not indicate any limitations attributable to Petitioner's vision disorder.

There are no statements in the medical records indicating that Petitioner's vision acuity, whether corrected or not, significantly limited Petitioner's ability to see, or to carry out basic work activity. Petitioner does not contest the findings of Dr. Bernabe, who noted that Petitioner's vision, with correction, was 20/20. Nor did Petitioner provide a statement from his ophthalmologist indicating that the visual acuity tests performed between 2016 and 2018 revealed a significant inability to see, whether aided or unaided. At least some chart notes indicate vision acuity was 20/20. Others indicate 20/80. There

is no explanation in the record regarding any functional limitations arising from any of these test results. Nor is there information in the record explaining the test results.

Even assuming the notations revealing "20/80" refer to Petitioner's corrected vision, there is no statement or indication that Petitioner was significantly limited in his ability to see, or to carry out any other basic work activity. It is Petitioner's burden to present acceptable medical evidence of a severe impairment. It is not enough, however, to present medical records containing measurements and leave it to the ALJ or the Court to conclude that the measurements reflect sufficiently severe limitations on Petitioner's ability to conduct basic work activities. *Phachanh v. Comm'r of Soc. Sec.*, No. 2:14-cv-1805-AC, 2015 WL 2374326, at *6 (E.D. Cal. May 18, 2015).

Petitioner cites his own testimony that he has visual problems driving at night, and he has difficulty reading small text on his iPhone without magnifying glasses. (AR 48 – 50.) And, he testified that his eyes hurt after ten minutes working on a computer, but clarified that the computer was his iPhone. (AR 49.) He confirmed he wears glasses to drive. (AR 38.) Even if these statements are evidence of a vision impairment, whether severe or non-severe, the only evidence supporting a claim of impairment is Petitioner's own statements, which are not enough to establish an impairment. *See* 20 CFR §§ 404.1508 and 416.908 ("[a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"); *Phachanh v. Comm'r of Soc. Sec.*, No. 2:14-CV-1805 AC, 2015 WL 2374326, at *7 (E.D. Cal. May 18, 2015); *Haddix v. Colvin*, 2014 WL

**MEMORANDUM DECISION AND ORDER - 9**

128035 at *3 (E.D. Cal. 2014) (same).

Petitioner has not identified evidence in the record demonstrating he has a vision impairment. Petitioner argues he established he has a medically determinable impairment because he was diagnosed with diplopia, telangiectasia, macularis, erupitva perstans of the right eye, and macular edema. Pet. Brief at 4. (Dkt. 16.) However, the existence of a visual disorder, such as macular edema, does not establish the existence of an impairment or limitation, severe or non-severe, arising from that disorder.

The regulations, and the cases applying them, expressly distinguish between visual disorders and the limitations these disorders may cause:

> Visual disorders are abnormalities of the eye ... that may cause a loss of visual acuity.... A loss of visual acuity limits your ability to distinguish detail, read, or do fine work.

Listing 2.00A(1); *see also* Listing 2.00A(4) (setting out conditions in which the Commissioner "will request a description of how your visual disorder affects your ability to function"); *accord, Sample v. Schweiker*, 694 F.2d 639, 642–43 (9th Cir. 1982) ("[t]he existence of emotional disorder, however, is not per se disabling. In addition, there must be proof of the impairment's disabling severity") (internal quotation marks and citations omitted); *see also Barber v. Astrue*, 2012 WL 458076 at *14 (E.D. Cal. 2012) ("the diagnosis alone did not shed light on the degree of limitation Plaintiff suffered"); *Kimzey v. Comm'r of Social Sec.*, 2011 WL 1230818 at *12 (E.D. Cal. 2011) ("[a] medical diagnosis alone does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities").

**MEMORANDUM DECISION AND ORDER - 10**

Although Petitioner's ophthalmologist diagnosed Petitioner with disorders that Petitioner argues establish an impairment, Petitioner apparently wears corrective lenses to enable him to drive and read. Petitioner offers no explanation for why his ability to see, or to perform other basic work functions, is impaired in any way by his vision disorders other than his stated inability to use a computer or drive. Pet. Reply Brief at 2. (Dkt. 18.) However, Petitioner's testimony did not concern his ability to use an actual desktop computer with, presumably, the corresponding capability to enlarge text on the screen, but rather to his ability to see fine print using his iPhone. *Id.* And, he testified only that he had difficulty driving at night, not that he was entirely unable to drive. The evidence in the record indicates Petitioner was able to drive, provided he wore corrective lenses.

The Court therefore finds the ALJ did not commit error at Step 2. Accordingly, there was no need for the ALJ to include any limitations with respect to vision in the RFC determination. *See* C.F.R. § 404.1545(a)(2)(in assessing residual functional capacity, ALJ considers only those impairments found to be medically determinable).

Even accepting Petitioner's argument that his vision disorders may preclude his ability to perform his past relevant work, the Court finds such error is harmless. *Molina*, 674 F.3d at 1115 ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination'") (quoting *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Petitioner did not explain, with support from evidence in the record, why an inability to see fine print on a computer screen the size of an iPhone or to drive at night would affect his ability to perform the representative occupations the ALJ identified

**MEMORANDUM DECISION AND ORDER - 11**

at Step 5. Rather, Petitioner argues only that, if his statements are true, then he could "not perform the work identified by the ALJ," specifically referring to his past relevant work as a design drafter. Pet. Reply at 2. (Dkt. 18.) Petitioner did not identify any error at Step 5 indicating his vision disorders, even if determined to be a medically determinable impairment, would prevent him from performing the occupations of cashier, marker, and routing clerk. Thus, the Court finds any error at Step 2 was inconsequential to the ultimate finding that Petitioner is not disabled.

In sum, none of the medical records explain what functional impairment Petitioner suffers as a result of his vision disorders. The Court is not authorized to substitute its own lay opinion of what level of vision would significantly affect Petitioner's ability to work. Instead, the Court looks to medical evidence of an impairment. Petitioner has not met his burden to establish one, nor has he shown harmful error.

## CONCLUSION

None of the clinical findings support a finding that Petitioner has a visual impairment that limits his ability to perform basic work activities, including "seeing." Rather, the medical evidence of record tends to show, as discussed above, that Petitioner has visual disorders and wears corrective lenses. The Court finds the ALJ did not commit error at Step 2. Assuming there was error, the Court finds the error was harmless. Petitioner has not pointed to evidence in the record that his vision disorders would support reversing the ALJ's determination at Step 5.

**MEMORANDUM DECISION AND ORDER - 12**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED THAT:**

The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and the Petition for Review is **DISMISSED**.

DATED: February 23, 2021

Honorable Candy W. Dale
United States Magistrate Judge